Kirkpatrick, C. J. — Was
of opinion that the record was inadmissible evidence on the issue; and therefore, that the judgment of the Common Pleas be reversed.
Rossell, J.
In the short time we have had to consider this question, I have not been convinced that the evidence admitted by the Common Pleas of Somerset, was illegal, or that the judgment of that [429] court should be set aside. The general rule, that a judgment between other parties, should not be given in [*] evidence against a stranger to the suit, will not admit of dispute; like all other general rules, it was instituted for the better administration of justice, and should never be made use of in direct violation of its original intention. He then, who cannot show himself within the reason and spirit of the rule, has no right to claim its extension to his particular case. The reason on which that excellent rule was formed, I take clearly to be— *160 that a party who might possibly be prejudiced by the production of a judgment between third persons, had no opportunity of being heard in his defense. Exceptions to this general rule, are sometimes allowed, and if ever there was a case to which courts would extend an exception, it should be like the present, where fraud appears to have been practiced, where liberty would be favored, and where, from the relative situation of the parties, much difficulty must necessarily arise.
Prall, the defendant below, is followed to his place of residence, in Somerset, by a stranger from a distant State, and prosecuted in the court of his own county for the recovery of a sum of money paid him by the plaintiff, in the suit for two blacks sold him by the defendant, as slaves, and to whom, it is alleged, he had no right, they being both free at the time of the sale. In support of this action, the plaintiff offered in evidence, a copy of the process by which these blacks were soon after taken out of his service, of the records of the court of Maryland, duly certified, permitting them to go at large. It is strongly urged by the counsel for Prall, “ that as he was not a party to the suit in Maryland, for the liberation of these negroes, and had no opportunity of showing his right to their service, and the fairness of the sale, the Court of Common Pleas of Somerset were in error in admitting these proceedings in proof.” I think not. The claim to the servitude of these blacks, which he alleges he had no opportunity of substantiating before the court of Maryland, he was in the [*] present action, under every favorable circumstance of time and place, called on to substantiate at his own home. The question, as to him, was by no means settled. Could he here have proved the sale made in good faith, he was justly entitled to a verdict in his favor, and he had not a shadow of pretense to say, that he was precluded by the decision of the court of Maryland, from giving in Somerset, proof of the slavery of the blacks, and the justness of the whole transaction. This was the gist of the *161 action there, it was also the gist of the action here; and in no possible way could Prall be prejudiced by the judgment [430] in Maiyland, had the negroes in question been his property at the time of the sale. He is not then within the reason of the general rule of which he claims the benefit, and cannot be entitled to it. The evidence admitted by the court of Somerset, went only to show, that by a power, over which Patton had no control, these blacks were taken out of his service; it was certainly necessary for him to show this, or he could not maintain his action against Prall. He must necessarily prove it by parol testimony, or by a copy from the records. Had he attempted to introduce parol evidence, the defendant would with much more reason have opposed it, as not being the best evidence, viz.: a certified copy of the record. If he succeeds in precluding the copy, the plaintiff, who has actually paid a large sum of money, by the contrivance of the defendant, without a valuable consideration, is left destitute of a remedy, and the justice of the country is eluded. I am therefore of opinion, from the whole case, that the judgment be affirmed.
Pennington, J.
As the record from Maryland is between other parties, it was res inter alios acta and prima facie inadmissible. It becomes necessary then, to look into the record, and see what relation the facts adjudged, if any there were, had to the issue under trial. The issue below, was freedom of the negroes at the time of the sale. The record, taken in [*] connection with the facts proved in the cause, (and without those facts it cannot be understood) is in substance, this: after the departure of Prall from Baltimore, Hicks interested himself in favor of the negroes, and at his instance they were taken out of the hands of Patten, and were taken to Hicks’ house; and while there, the negroes petition the court, stating that they were free, and that Hicks unlawfully held them in servitude. Hicks in answer, says, that he cannot deny the fact, and the negroes have judgment. *162 This record was offered to the jury to prove the fact of the freedom of the negroes, at the time of the sale. In my opinion, it was inadmissible evidence on the issue, and was calculated to mislead the jury. I agree to the Virginia case, cited from Hening and Munford. In that case, the issue was the freedom of the plaintiff. The court permitted the plaintiff to give in evidence, a record between other parties, which record disclosed this fact; that the female ancestor of the plaintiff was adjudged free at a certain time, anterior to the commencement of the action under trial; this bore directly on the issue. In the present case, the record from Maryland, (putting out of view the evident marks of collusion) at most, goes to establish this fact, that the negroes were free at [431] a time subsequent to the sale, by Prall to Patten; this might all be true, and yet they may have been slaves at the time of the sale; the evidence must be confined to the issue.
Judgment of the Common Pleas reversed, and a venire de novo awarded[1]

 The probability is, that the negroes were slaveB in Jersey. That either the taking them into Maryland, and offering them for sale there, made them free by the laws of Maryland; or what is very probable, that the taking them into Maryland, together with the sale itself, made them free by the law of Maryland. If the first, the laws of Maryland should have been proved, and that, with the evidence in the cause, without the record, would have been sufficient to maintain the action. If the latter, the action was misconceived; it should have been a special action on the case, charging the deceit and fraud in Prall, in representing the negroes as Maryland negroes. If it was intended to try the fact of the negroes being free when taken from Jersey, the record from Maryland was the most dangerous and unsafe that can well be imagined; wholly exparte, and evidently conclusive.